UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: NOV 2 8 2012
```

-------------------------------------------------------------X

YING KUANG,

                      Plaintiff,

       -v-

GENZYME GENETICS CORPORATION,

                      Defendant.

-------------------------------------------------------------X

11 Civ. 06346 (AJN)

MEMORANDUM
AND ORDER

ALISON J. NATHAN, District Judge:

      Plaintiff, Ying Kuang ("Kuang"), alleges that her employer, Genzyme Genetics

Corporation ("Genzyme"), discriminated against her on the basis of her age, race, national

origin, and gender, and retaliated against her. Following Plaintiff's counsel's repeated failure to

abide by court orders, as well as misrepresentations to the Court, refusal to make Plaintiff

available for a complete deposition in an apparent attempt to gain an unfair tactical advantage in

the litigation, and refusal to work with his adversary to complete discovery, this action is

DISMISSSED.

## I.     BACKGROUND AND PROCEDURAL HISTORY

      This action was commenced on September 12, 2011, and alleges violations of Title VII of

the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq*. and the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. The Complaint originally named two

defendants: Genzyme, Plaintiff's employer, and Lauren Lyall ("Lyall"), Plaintiff's immediate

supervisor at Genzyme. On December 13, 2011, Judge Rakoff entered a scheduling order

requiring that all discovery be completed by April 13, 2012. (Docket # 6).

      A.   <u>The Claims against Defendant Lyall Were Dismissed and Fees Were Awarded</u>

On December 30, 2011, Defendant Lyall filed a Motion for Judgment on the Pleadings, arguing that there exists no liability for individual supervisors such as herself under the statutes pleaded in the Complaint. (Docket #'s 8–9). On February 2, 2012, Judge Rakoff granted Lyall's motion and dismissed all of the claims against her. (Docket # 14). Judge Rakoff noted that the "Second Circuit has long ago rejected Kuang's arguments that Title VII's and the ADEA's definitions of 'employer' include individual supervisors." (*Id.* at 2). The case was thereafter reassigned to the undersigned Judge.

On July 25, 2012, this Court granted Defendant Lyall's application for fees, finding that the claims against her had been frivolous and groundless from their inception, and that Plaintiff had continued to litigate the claims after their frivolousness was made apparent. (Docket # 36). The Court found, *inter alia*, that Plaintiff's counsel, Mr. Frank Xu, continued to pursue the claims even after he had been made aware in email and phone conversations early in the litigation that the claims against Lyall were untenable as a matter of clear and well-established law. (*Id.* at 5–7).

### B. Difficulty Completing Discovery

Meanwhile, the case against Defendant Genzyme proceeded through discovery, with repeated requests for extensions from the parties. On June 8, 2012, this Court entered a third order extending the schedule for discovery, indicating at that time that all discovery must end by July 27, 2012, and that no further extensions would be granted. (Docket # 34).

However, Plaintiff's counsel's conduct made it impossible to complete discovery by that date. The example of the Lyall deposition is indicative of Plaintiff's counsel's course of conduct. Late in the afternoon on July 24, 2012, Plaintiff's counsel sent an email to Defendant's counsel cancelling the deposition of Lyall, which was scheduled to commence the next morning

(only two days before all discovery was to be completed).  (Docket # 40 at 8–9).  Plaintiff's

counsel initially stated that the cancellation was necessary because his conference room was

booked.  (*Id.*).  When Defendant's counsel offered use of his conference room, Plaintiff's

counsel wrote back, "Plaintiff Ms. Kuang called in saying her depression strike again [*sic*];

however, she planned to be present during Ms. Lyall's deposition; hopefully Friday July 27,

2012 would work but I am not 100% sure."  (*Id.* at 8).  After the end of business on July 25,

2012, Plaintiff's counsel emailed Defendant's counsel unilaterally seeking to reschedule Lyall's

deposition for July 27, 2012, just one business day later.  (Docket # 40).  When Lyall was not

made to appear on such short notice, Plaintiff's counsel sent a letter to the Court asserting that

Ms. Lyall had "defaulted in appearance without giving any explanation," (Docket # 39).

C.   The August 3, 2012 Conference

At a conference held on August 3, 2012, which had previously been scheduled to occur

after the conclusion of all discovery, the Court addressed many of the disputes and delays that

had arisen and sought to steer the case towards a completion of discovery.  The issues addressed

included: (1) Plaintiff's counsel's belated requests for additional depositions, (2) Plaintiff's last

minute attempt to prevent a deposition of Plaintiff's treating psychotherapist, and (3) Plaintiff's

inability to complete her deposition.

1.   The Court Addressed Plaintiff's Counsel's Belated Request for
Additional Depositions

Prior to the August 3, 2012 Conference, Plaintiff's counsel submitted a letter requesting

additional time to conduct depositions that had not been noticed during the discovery period.

(Docket # 39 at 1–2).  Plaintiff's counsel made additional requests for depositions at the August

3 conference, each of which the Court addressed in turn.

First, the Court orally denied Plaintiff's request to depose Mr. James Luisi. (8/3/12 Tr. at 28:20–29:2). Mr. Luisi had been included in Defendant's initial disclosure, which were produced to Plaintiff in December of 2011, yet Plaintiff's counsel asserted that he did not realize a need to depose this witness until after hearing information disclosed by *his own client* at a deposition held just eight days before discovery was set to close in July of 2012. (*Id.*; 8/3/12 Tr. at 33:15–34:11). The Court determined that such late notice for a deposition was not justified by Plaintiff's counsel's inability to adequately ascertain his own client's version of events earlier in the litigation. (8/3/12 Tr. at 28:20–29:2).

Plaintiff's counsel also requested leave to depose Mary Mickins, a defense witness listed in Defendant's initial disclosure for whom Plaintiff's counsel failed to notice a deposition until after the expiration of the repeatedly extended discovery deadline. (*Id.* at 34:12–35:24). The Court denied this request, noting to Plaintiff's counsel that "you had every opportunity to seek to get these depositions. And you didn't . . . . I think every possible opportunity has been given to you to get done what you need to get done in a reasonable amount of time, and you have not taken it. So the request for a late deposition . . . despite the Court's explicit admonition sometime ago that July 27 would be the close of discovery . . . is denied." (*Id.* at 35).

The Court did grant Plaintiff leave to depose defense witness Rwei Chang in spite of late notice of her deposition because Defendants had failed to include Chang in their initial disclosures. (*Id.* at 30:21–31:2). The Court also granted Plaintiff's request for an extension in time to depose Ms. Lyall, even though, as discussed in Section "I.B" above, Plaintiff's counsel was not able to provide a satisfactory explanation for his decision to cancel her previously scheduled deposition. (Docket # 41).

### 2.  The Deposition of Dr. Wang

The Court also addressed problems that had arisen regarding the deposition of Plaintiff's

psychiatrist, Dr. Wang.  Fewer than twenty-four hours before Dr. Wang was to be deposed,

Plaintiff's counsel withdrew his client's HIPAA waiver[1] and applied to the Court for an

"Emergency Protective Order" to prevent the deposition from proceeding.  (Docket # 37 at 2–3).

Dr. Wang's deposition was related to Plaintiff indication in her initial disclosures that she was

seeking $100,000 in damages for alleged "emotional distress."  (*Id.* at 8).  Plaintiff's counsel did

not inform Defendant's counsel that it objected to Dr. Wang's deposition until 3:00 PM on the

day before the deposition was scheduled to occur.  (*Id.* at 9–10, 19).

At the August 3 conference, Plaintiff's counsel was not able to articulate any reason why

his client should be permitted to seek $100,000 in non-garden variety emotional distress damages

without waiving the psychotherapist-patient privilege and permitting Defendant's counsel to

depose Plaintiff's psychiatrist in light of the Second Circuit's decision in *In re Sims*, 534 F.3d

117, 133–34 (2d Cir. 2008).  (*Id.* at 10–14).

In spite of Plaintiff's counsel's last minute cancellation of Dr. Wang's deposition on July

25, 2012, the Court understands that Dr. Wang was subsequently made available to Defense

counsel for a deposition.  (Docket # 46 at 2).

### 3.  Plaintiff's Deposition

Finally, the Court addressed persistent problems related to Plaintiff's incomplete

deposition.  (8/3/12 Tr. at 19:22–27:17).  Previously, on July 3, 2012, the Court had received a

letter from counsel for Defendant stating that Plaintiff's deposition had been terminated after

only three hours and that, following "repeated efforts," counsel for Defendant had not been able

---

[1] "An individual may revoke" a HIPAA waiver "at any time, provided that the revocation is in writing, except to the extent that . . . [a] covered entity has taken action in reliance thereon."  45 C.F.R. § 164.508(b)(5); *see also  Koch v. Cox*, 489 F.3d 384, 391 (D.C. Cir. 2007).

to get counsel for Plaintiff to agree to scheduling a continuation of the deposition. (Docket # 35). Seven days later, on July 10, 2012, not having heard from counsel for Plaintiff, the Court ordered that Plaintiff be made available for continuation of her deposition within ten days. (*Id.*). On July 19, 2012, Plaintiff was made available for an abbreviated deposition, which was cut short at 2:00 PM because Plaintiff reported that she was not feeling well. (Docket # 40 at 3).

At the August 3 conference, the Court ordered that Plaintiff be made available for an additional five hours of deposition testimony. (8/3/12 Tr. at 27:13–17). The Court recognized that Ms. Kuang had by that point been deposed for a total of five hours. (*See* Docket # 40 at 3). This five hours of deposition had been conducted over two days because Plaintiff's purported depression interfered with her ability to be deposed for an entire day. (*Id.*). Defendant requested an additional seven hours of deposition. (*Id.*). Plaintiff's counsel argued that compelling his client to attend more depositions would be an "undue burden" and therefore impermissible under Rule 45. (Docket # 39). Additionally, Plaintiff's counsel represented that although Ms. Kuang aspired to attend other witnesses' depositions, he did not believe that she was well enough to be deposed herself. (*See* 8/3/12 Tr. at 22:24–23:17).

The default length for a deposition is seven hours. Fed. R. Civ. P. 30(d)(1). The Advisory Committee Notes to the 2000 Amendment of Rule 30 contemplates that "reasonable breaks" will be taken throughout any day of deposition, and provides that "the only time to be counted [in reaching seven hours] is the time occupied by the actual deposition." Notwithstanding the 7 hour default rule, Rule 30 states that, "[t]he court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 30(d)(1); *see also Arista Records LLC v. Lime Group LLC,* No. 06 Civ. 5936, 2008 WL

6

1752254, at * 1 (S.D.N.Y. Apr. 16, 2008); *Margel v. E. G.L. Gem Lab Ltd.,* No. 04 Civ. 1514, 2008 WL 2224288, at *8 (S.D.N.Y. May 29, 2008) (finding that the 2000 amendments to Rule 30 "established a presumptive time limit of seven hours for depositions, with the proviso that this period can be extended for good cause shown."). In fact, Rule 26(b) authorizes a court to "alter the limits in these rules . . . on the length of depositions under Rule 30." Fed. R. Civ. P. 26(b)(2)(A). Therefore, "[a] district court has broad discretion to set the length of depositions appropriate to the circumstances of the case." *Arista Records,* 2008 WL 1752254, at *1 (citing *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir. 2000)).

The Court, considering that the use of a Mandarin interpreter had slowed down the deposition, ordered that Plaintiff should be produced for an additional five hours of deposition. (8/3/12 Tr. at 27:13–17).

The Court instructed Plaintiff's counsel:

> Mr. Xu, I say that just to make clear on the record . . . [and] give you notice of my view that we either need to get the deposition of your client completed consistent with my ruling that five additional hours will be permitted, or I think that dismissal of the case may be appropriate. I obviously take seriously the notion that your client faces health issues that are so severe that she cannot proceed. I would not want to do anything that genuinely jeopardizes her health in any way. But I do think we need to make a determination whether or not this is litigation that can go forward.

(*Id.* at 25–26).

In an order docketed later that day, the Court instructed that if "Plaintiff, Ms. Kuang, is not well enough to be deposed any further, Plaintiff's counsel shall by August 10, 2012, submit to the Court and deliver to counsel for Defendant a sworn affidavit from a treating physician indicating that Ms. Kuang is unable to be deposed . . . . In the absence of such a sworn affidavit, Ms. Kuang shall be made available to be deposed for an additional **five hours** on or before

August 21, 2012." (Docket # 41) (emphasis in original). The Court's August 3, 2012 Order made clear that if no such affidavit was submitted and if Plaintiff was not made available to complete her deposition, the Court might consider dismissing the case. (*Id.*).

### 4. New Deadlines

As codified in an Order issued later in the day on August 3, 2012, the period for fact discovery was extended through August 31, 2012. (Docket # 41). Defendant's counsel stated on the record at the conference that he would be away from August 22 through August 29, and the Court acknowledged the need to schedule around this absence. (8/3/12 Tr. at 27:19–28:5). Expert discovery was extended though September 28, 2012. (Docket # 41).

### D. Plaintiff's Continued Failure to Complete Her Deposition and Plaintiff's Counsel's Conduct Subsequent to the August 3 Conference

On August 10, 2012, Defendant's counsel sent a letter to the Court indicating that Plaintiff's counsel had gone "radio silent" and was not cooperating in scheduling depositions for either Ms. Chang or Ms. Lyall, whose depositions the Court had granted Plaintiff a fourth extension of time to complete. (Docket # 43).

In response to this letter, the Court docketed an Order on August 13, 2012, requiring Plaintiff's counsel to notify the Court and his adversary by August 14, 2012, whether he intended to proceed with the depositions of Chang and Lyall. (*Id.*). The Court further noted that it had not received an affidavit indicating that Plaintiff was not well enough to be deposed, as required by the August 3, 2012 Order. (*Id.*). The Court instructed Plaintiff to be available for a deposition by August 20, 2012 or to show cause in writing by that date why the case should not be dismissed. (*Id.*).

Later in the day on August 13, 2012, Plaintiff's counsel submitted a declaration from Dr.

8

Wang regarding Plaintiff's health that failed adequately to address the issues raised in the Court's August 3, 2012 Order. (Docket # 44). In the affidavit, Dr. Wang stated that Plaintiff herself felt that she was not able to be deposed. (*Id.*). Dr. Wang did not aver in his affidavit that he believed Plaintiff unable to be deposed for medical reasons. (*Id.* at 7 ¶ 4). Plaintiff's counsel did not acknowledge that this submission was several days late, nor did he acknowledge that it was insufficient to meet the requirements of the Court's August 3, 2012 Order. (*Id.* at 3–4).

Nonetheless, the Court again extended the period for fact discovery to grant Plaintiff "one final opportunity to proceed with her deposition" on the week of September 3, 2012. (Docket # 44 at 1). The Court required that "Counsel for Plaintiff shall notify the Court and counsel for Defendant by 5:00 PM on August 30, 2012, whether Plaintiff will be available to be deposed on the week of September 3" and further ordered that if "such notice is not sent by August 30, 2012 . . . then Plaintiff's counsel shall show cause in writing by September 5, 2012, why this case should not be dismissed." (*Id.* at 2).

The Court cautioned that "[i]n light of Plaintiff's history of delay, missed deadlines, and failure to comply with Court Orders in this case, Plaintiff is admonished to strictly comply with this Order." (*Id.*). The August 14, 2012 Order put Plaintiff's counsel on notice for a fourth time of case law known to the Court suggesting that dismissal of the case might be appropriate if Plaintiff's counsel failed to make his client available for a complete deposition or to allow other discovery to proceed. (*Id.*).

Despite the Court's clear warnings, Plaintiff's counsel missed both of the deadlines in the August 14, 2012 Order. He did not submit notice that his client would be available for deposition by August 30, 2012, and he did not show cause in writing why the case should not be dismissed on September 5, 2012. Instead, on the afternoon of September 5, 2012, Plaintiff's

9

counsel emailed Defendant's counsel to state his intention of making Plaintiff available for a deposition on the morning of September 7, 2012, just over one day later. (Docket # 49 at 5). Plaintiff's counsel failed to acknowledge his missed deadlines and the difficulty (if not impossibility) of arranging for a Mandarin interpreter and court reporter on such short notice. (*Id.*).

Additionally, in spite of Plaintiff's counsel's "radio silence" and unexplained failure in the week immediately following the August 3, 2012 conference to schedule depositions of Lyall and Chang, which the Court granted a fourth extension of the discovery period to allow, on August 13, 2012, Plaintiff's counsel sought to schedule depositions for these witnesses on August 23 and August 28. Plaintiff's counsel attempted to schedule depositions on those dates even though Defendant's counsel had informed the Court and Plaintiff's counsel at the August 3, 2012 conference that he would be away on those dates and the Court explicitly recognized the need to schedule around Defendant's counsel's absence. (8/3/12 Tr. at 28:9–11).

On August 27, 2012, Plaintiff's counsel submitted a letter to the Court stating "[u]pon information and belief, the so called 'vacation' is quite possibly one of litigation schemes used to preempt and nullify Plaintiff's fair opportunity to depose Defendant's witnesses [*sic*]." (Docket # 47). Inexplicably, Plaintiff's counsel asserted that his "[i]nability to depose relevant Defendant's witnesses sooner, is, at least partly, cause by Defendant's lack of cooperation [*sic*]." (*Id.*).

### E. Request for a Dismissal

#### 1. Defendant Submits a Letter Requesting Dismissal

In response to Plaintiff's counsel's continued failure to schedule depositions—including the yet-to-be completed deposition of his client—in a professional or sincere manner and his

repeated failure to comply with court orders designed to facilitate a fair and efficient resolution

of the discovery process, Counsel for Defendant submitted a letter to the Court on September 6,

2012, requesting dismissal of the case. (Docket # 49)

### 2. Plaintiff's Counsel's Response

On September 10, 2012, Plaintiff's counsel submitted a letter opposing Defendant's

request for a dismissal. (Docket # 48). Plaintiff's counsel asserted that Defendant's Answer

should be stricken and a default judgment entered as a sanction. (*Id.* at 4–5) Plaintiff's counsel

argued that such a sanction was appropriate for three reasons. First, Plaintiff argued a sanction

was appropriate because Defendant refused to make available certain witnesses. (*Id.*). But these

were witnesses the Court had previously ruled need not be deposed. (8/3/12 Tr. at 28:22–29:2;

Docket # 41 at 1). Second, Plaintiff believed a sanction appropriate because of an inability to

schedule a deposition of Ms. Rwei Chang. (Docket # 48 at 3–4) But Chang was no longer

employed by Defendant at that time and Plaintiff's counsel was warned to schedule a deposition

prior to Ms. Chang's leaving Genzyme. (Docket # 43 at 3). Third, Plaintiff focused on the

inability to schedule a deposition for Lyall. (Docket # 48 at 4). But this was due to Plaintiff's

counsel's prior attempt to unilaterally change the time of Lyall's deposition without adequate

notice to his adversary. (*See* Section "I.B" above). Finally, Plaintiff's counsel asserted a

"demand" that "Defendant shall show cause why lawyer-client privilege attaches to all the

communication, documents, records and information as listed in its Privilege Log [*sic*]."

(Docket # 48 at 5).

In his September 10, 2012 letter, Plaintiff's counsel further argued that his failure to

notify the Court and his adversary by August 30, 2012, whether his client would proceed with

her deposition on September 3, 2012, as required by the Court's August 14, 2012 Order, was not

11

willful because "it was not guaranteed that Plaintiff, Ms. Kuang, would be available to be deposed . . . ." (*Id.* at 1–2). Plaintiff's counsel avers that Ms. Kuang "recently suffered panic attack [*sic*] and needed time to recover." (*Id.*). Plaintiff's counsel submitted no documentation from a medical expert confirming either the truth of the assertion that Plaintiff had a "panic attack," or an explanation as to why this supposed "panic attack" may have prevented Plaintiff from being deposed weeks later. Nor did Plaintiff's counsel explain his inability to provide even a status update to the Court either on August 30, 2012, or September 5, 2012.

Additionally, Plaintiff's counsel's recounting to the Court of his supposed attempts to coordinate with his adversary to schedule Plaintiff's deposition appears misleading. For example, the Court had previously ordered Plaintiff's counsel to notify his adversary and the Court by August 30, 2012 as to whether his client would be available for a deposition during the first week of September. (*See* Section "I.D" above). Plaintiff's counsel failed to provide any communication to either his adversary or the Court by August 30. Instead, Plaintiff's counsel waited until September 5, 2012, to inform his adversary that his client would be available on September 7. (Docket # 49 at 5). Yet in his September 10, 2012 letter to the Court, Plaintiff's counsel averred that "[a]n impartial, reasonable and equitable reading . . . is that Defendant's attorney . . . was well prepared to take deposition on [September 7], with no actual inconvenience, impossibility or prejudice . . . .[*sic*]." (*Id.* at 2). Plaintiff's counsel deduced that his adversary "did not really have a need to take any further deposition," that "it was all a game," and that Defendant's counsel "affirmatively rejected [Plaintiff's] ready appearance for deposition." (*Id.*).

Plaintiff's counsel also averred that Ms. Lyall's deposition, which Plaintiff's counsel cancelled at the last minute on July 24, 2012, and unilaterally sought to reschedule the next day

12

(*see* Section "I.B" above), was "adjourned by attorneys' consent." (*Id.* at 3).  Additionally,

although Plaintiff's counsel "noticed" a deposition for Rwei Chang for a week that he knew his

adversary would be out of town, he alleges in his September 10, 2012 letter that Chang

"defaulted" by not appearing.  (*Id.* at 3–4).  Moreover, although the Court was clear both orally

and in the August 3, 2012 Order that Plaintiff's counsel was precluded from deposing Mr. James

Luisi (8/3/12 Tr. at 28:22–29:2; Docket # 41 at 1), Plaintiff's counsel wrote to the Court that his

adversary was "taking full advantage" of what Plaintiff's counsel mischaracterized as "the

Court's *tentative* preclusion of Mr. James Luisi's deposition." (Docket # 48 at 4) (emphasis

added).  Finally, Plaintiff's counsel inaccurately informed the Court that his adversary had failed

to produce discovery "including especially its repeated failure to appear for depositions [*sic*]."

(*Id.*).

### 3.   The Court Requested Additional Briefing

On October 1, 2012, the Court issued an order informing the parties that it would treat

their letters as briefing on a motion to dismiss the case pursuant to Rule 37, and requested

supplemental submissions addressing the motion in light of the Second Circuit's recent decision

in *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, (2d Cir. 2012).

(Docket # 53).  On October 10, 2012, Defendant submitted a letter discussing its position in light

of *World Wide Polymers*.  (Docket # 54).  By contrast, Plaintiff's briefing on *World Wide

Polymers* consisted of this single sentence: "A reading of one recent case, World Wide Polymers,

Inc. v. Shinkong Synthetic Fibers Corp., -- F.3d -- (2d Cir. Sept. 14, 2012) Your Honor cited,

shows that Defendant's *frivolous* request for an outright dismissal, if made, should be denied."

(Docket # 55).  In his letter, Plaintiff's counsel renewed his request that *Defendant's* Answer be

stricken and that a default judgment be entered.  (*Id.*).

## II.   DISCUSSION

### A.   Dismissal is Appropriate Because of Plaintiff's Counsel's Repeated Failure to Comply with Discovery Orders.

A court may dismiss a plaintiff's case "for failure of the plaintiff to prosecute or to comply with . . . any order of the court." Fed. R. Civ. P. 41(b).  Similarly, a Court may dismiss an action for repeated failures to comply with discovery orders. Fed. R. Civ. P. 37(b)(2)(A). Additionally, the sanctions listed in Fed. R. Civ. P. 37(b)(2)(A)(ii)–(vii), which include dismissal of a case, may be applied pursuant to Rule 16(f) if a party "fails to obey a scheduling or other pretrial order."

"[D]ismissal with prejudice is a harsh remedy to be used only in extreme situations . . . . , and then only when a court finds willfulness, bad faith, or any fault on the part of the prospective deponent." *Valentine v. Museum of Modern Art*, 29 F.3d 47 (2d Cir. 1994) (quoting *Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d 759, 764 (2d Cir. 1990)).  However, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643 (1976) (per curiam).

In assessing dismissals pursuant to Rule 37, the Second Circuit has relied on factors including: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *World Wide Polymers, Inc.*, 694 F.3d at 159 (citing *Agiwal v. Mid Island Mortg. Corp.,* 555 F.3d 298, 302

14

(2d Cir. 2009)).  "[T]hese factors are not exclusive, and they need not each be resolved against" the party being sanctioned.  *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).  A district court is "free to consider the full record of the case in order to choose the appropriate sanction."  *Id.*

  As discussed below, each of these factors weighs in favor of dismissing this case.

    1.  Plaintiff's Counsel's Willful Noncompliance

  First, the Court considers Plaintiff's willfulness in failing to comply with the Court's orders.  Willfulness may be evinced by a failure to attend depositions that counsel has scheduled and "last minute notices" informing an adversary of refusal to attend a deposition.  *S.E.C. v. Setteducate*, 419 F. App'x 23, 25 (2d Cir. 2011) (summary order).

  The record is replete with Plaintiff's counsel cancelling deposition and/or seeking to unilaterally change dates and times of depositions with only last minute notice to counsel for Defendant.  For example, as discussed in Section "I.B" above, Plaintiff's counsel cancelled the deposition of Lauren Lyall the day before it was to proceed without providing an adequate reason (Docket # 40 at 8–9).  The day after cancelling the deposition, Plaintiff's counsel unilaterally sought to reschedule it on 24 hours notice.  (Docket # 40 at 2).

  Similarly, on the afternoon before Dr. Wang was to be deposed, Plaintiff's counsel suddenly retracted his client's HIPAA waiver and sought an "Emergency Protective Order," thereby delaying the deposition.  (Docket # 37 at 2–3).  The shortcomings of this conduct is underscored by Plaintiff's counsel's apparent later decision to drop its objection to a deposition of Dr. Wang following the Court's admonition that, absent a deposition of the treating psychiatrist, the Court would likely preclude Plaintiff from pursuing $100,000 in damages for alleged non-garden variety emotional distress.  (Docket # 46 at 2).

Furthermore, Plaintiff's counsel's actions have undermined his credibility and create an inference of willful failure to abide by the Court's orders.  For example, though the Court had ordered Plaintiff's counsel to produce by August 10, 2012, an affidavit from a treating psychiatrist attesting that Plaintiff could not be deposed for medical reasons, it was not until August 13, 2012, that Plaintiff's counsel, following the docketing of a court order noting the absence of any such affidavit, submitted an insufficient affidavit without acknowledgement of its tardiness.  (Docket # 44).

Plaintiff's counsel's misrepresentations in his submissions to the Court further create an inference of willfulness.  Plaintiff's counsel wrote to the Court that Defendant Lyall had avoided her deposition and "defaulted in appearance without giving any explanation," (Docket # 39 at 1), even though Plaintiff's counsel knew that it was he who had cancelled the scheduled deposition without any adequate explanation and unilaterally rescheduled it twenty-four hours later. Subsequently, Plaintiff's counsel inaccurately represented to the Court that the adjournment of Lyall's deposition to a later date had been "by attorneys' consent."  (Docket # 48 at 3). Additionally, despite the Court's denial of Plaintiff's request to depose Mr. James Luisi at the August 3, 2012 conference and again in a subsequently docketed order (8/3/12 Tr. at 28:22–29:2; Docket # 41), Plaintiff's counsel misrepresented that the Court's decision with regards to Mr. Luisi's deposition was "tentative."  (Docket # 48 at 4).  These examples support the Court's conclusion that Plaintiff's counsel's misconduct has been intentional.

Additionally, Plaintiff's counsel's insistence on scheduling depositions for times when he knew that Defendant's counsel would be out of town (*see* Section "I.E.2" above) suggests a willful course of conduct designed to flout this Court's orders and delay resolution of this case.

Finally, the Court's August 14, 2012 Order unambiguously required Plaintiff's counsel to

16

notify his adversary by August 30, 2012, whether Plaintiff would be available for a deposition on the week of September 3, 2012, or else to show cause in writing by September 5, 2012, why this case should not be dismissed.  (Docket # 44).  To underscore the importance of compliance with this Order, the Court wrote that "[i]n light of Plaintiff's history of delay, missed deadlines, and failure to comply with Court Orders in this case, Plaintiff is admonished to strictly comply with this Order."  (*Id.*).

After failing to comply with the Order by not submitting any notice on August 30, 2012, and not showing cause in writing why the case should not be dismissed on September 5, 2012, Plaintiff's counsel argued in his September 10, 2012 letter that his non-compliance was not willful because, as of August 30, 2012, Plaintiff's counsel was not certain whether his client would be available to be deposed on the week of September 3 owing to a recent "panic attack." (Docket # 48 at 1–2).  However, what Plaintiff's counsel indicates is that he did have a reason with which he could have shown cause in writing on September 5, 2012, why this case should not be dismissed: he was uncertain about his client's health on August 30 and therefore could not provide a firm statement at that time as to whether his client would be available the next week. But Plaintiff's counsel did not present this information to the Court as required by the August 14, 2012 Order.

Plaintiff's counsel concedes that he was not "in literal compliance accordance with the Order [*sic*]," and yet provides no adequate explanation as to why he did not comply.  (*Id.*).  In essence, Plaintiff's counsel asks the Court to take his word for it that his persistent failure to abide by court orders was not willful.  But under the circumstances presented, the Court does not credit Plaintiff's counsel's assertion.

In short, the record points to the conclusion that Plaintiff and her counsel's persistent

17

non-compliance with court orders has been willful.

           2.   Efficacy of Lesser Sanctions

      The Court finds that Plaintiff's counsel's pattern of obstructive conduct, failure to engage in discovery in a professional or productive manner, and non-credible representations to the Court have prejudiced Defendants to the point where no lesser sanction is sufficient.

      The Court is aware that monetary sanctions short of dismissal may in many cases be sufficient to compensate a defendant for the substantial costs of litigating against frivolously-induced discovery disputes and contesting obstructive conduct. *Ocello v. White Marine, Inc.*, 347 F. App'x 639, 641–42 (2d Cir. 2009) (summary order). However, in the present case, the Court has already informed the parties that it intends to award Defendant Lyall some attorney's fees upon a finding that the action against her was prosecuted after its frivolousness was made clear to Plaintiff's counsel. Yet the imposition of fee shifting against Plaintiff did not dissuade Plaintiff's counsel from continuing to make assertions that are contrary to long-standing and unequivocal Second Circuit case law, and it did not temper Plaintiff's counsel's behavior in litigating this case. Moreover, Plaintiff's counsel has represented that his client is indigent and unable to pay any fines (Docket # 44 at 4). Therefore, to the extent that the Court might consider monetary sanctions against Plaintiff herself, Plaintiff's inability to pay any such fine means that such a sanction would not be able to ameliorate any of the prejudice suffered by Defendant.

      Defendant has been further prejudiced by its inability to ascertain key facts about the case because it cannot complete its deposition of the most important witness, Plaintiff herself. Defendants have therefore been deprived of the opportunity to effectively plan their defense and this far into the litigation, much of this prejudice cannot be undone.

      The Court's conclusion that a lesser sanction would not further dissuade Plaintiff's

counsel is underscored by the failure on the part of Plaintiff's counsel to cease obstructive conduct and abide by clear Orders issued by this Court even after being warned on four separate occasions, orally and in writing, that failure to make his client available to be deposed could result in dismissal of this case.  (8/3/12 Tr. at 25:11–27:4; Docket #'s 41, 43, 44).

Plaintiff's counsel refused to comply with discovery orders, noticed depositions in a manner indicating no serious intention of allowing the depositions to proceed, and did not make his client available for a complete deposition following these four stern warnings and clear admonitions.  The Court therefore concludes that no lesser sanction would be sufficient to rectify the prejudice to Defendant and compel Plaintiff and her counsel to partake in the litigation in the manner necessary for it to be completed.

### 3.   The Duration of Noncompliance

Judge Rakoff originally scheduled discovery to conclude on April 13, 2012.  (Docket # 6).  The Court allowed the original four months allotted for discovery to be more than doubled by granting five extensions.  (Docket #'s 25, 33, 34, 41, 44).  Yet in the more than eight months that this routine employment action has languished in fact discovery, Plaintiff's counsel still has not made his client available for a complete deposition and, despite his representations to the Court that his client has at times not been well enough to be deposed, has failed to submit an affidavit from a medical professional sufficient to corroborate this assertion.  Plaintiff was to be deposed on May 23, 2012, but was unable to complete the deposition and has since been unable to provide the standard seven hours of complete deposition *testimony*.  (Docket # 35).  To extend a single deposition over a period of three and one half months—including more than two months after the Court first ordered Plaintiff to complete her deposition—is a substantial amount of time.

Additionally, several months of have passed since the Court took an active role in trying

19

to steer this case towards a completion of discovery, and summary judgment motions or a trial as necessary. Throughout these several months, Plaintiff's counsel has consistently ignored this Court's orders and instructions. In light of the Court's active role, enough time has passed.

### 4. Warnings to the Non-Compliant Party

As discussed, Plaintiff's counsel has received four warnings and admonitions, both orally and in writing, that continued non-compliance with court orders, failure to produce his client for a complete deposition, and generally obstructive conduct may result in dismissal of this case with prejudice. (8/3/12 Tr. at 25:11–27:4; Docket #'s 41, 43, 44). This is not a case where the Court merely noted one time that "no further extensions" would be granted. *See World Wide Polymers*, 694 F.3d at 160. Plaintiff's counsel was sufficiently warned and continued to fail to rectify his recalcitrant behavior.

### 5. Much of the Misconduct Was Designed to Earn a Tactical Benefit

In addition to the four factors discussed, the Second Circuit has further instructed that "it can be important for the district court to assess the relative roles of attorney and client in causing the delay, as well as whether a tactical benefit was sought by the misconduct." *World Wide Polymers*, 694 F.3d at 159. "When an attorney's misconduct or failing does not involve an attempt to place the other side at an unfair disadvantage, any sanction should ordinarily be directed against the attorney rather than the party, absent strong justification." *Id.* at 160.

The Court concludes that Plaintiff and her counsel have sought a tactical advantage by repeatedly attempting to protect Ms. Kuang from her obligation to allow her adversary to depose her. Plaintiff's counsel refused to schedule times in good faith to complete Plaintiff's deposition. (*See* Section "II.D" above). Plaintiff's counsel claimed that his client was too ill to continue to be deposed, but presented the Court and his adversary inadequate records to demonstrate so

much. (Docket # 44). Plaintiff's counsel's failure to notify his adversary and the Court whether Plaintiff would be available for a deposition on the week of September 4, 2012, and unrealistic offer on September 5, 2012, to make his client available less than 48 hours later without any prior notice, all suggest a course of conduct designed to prevent Ms. Kuang from having to be subjected to a complete deposition.

Additionally, Plaintiff's counsel's petition for an "Emergency Protective Order" to prevent the deposition of Plaintiff's treating psychiatrist, Dr. Wang, less than 24 hours before it was scheduled to commence, further suggests attempts by Plaintiff's counsel to obstruct depositions that his adversary was entitled to conduct. Plaintiff's counsel's refusal to conduct a scheduled deposition of Ms. Lyall on July 25, and unilateral attempt to reschedule it 24 hours later suggests conduct intentionally intended to inflict undue costs and burden on his adversary, as well as potentially to provide Mr. Xu himself with additional time to prepare for depositions that he should have been ready to conduct at the scheduled dates and times.

****

As discussed, all factors regularly considered by the Second Circuit for dismissal pursuant to Rule 37 weigh in favor of dismissing this case.

The Court notes that while in his September 10, 2012 letter, Plaintiff's counsel correctly identified four of the factors provided for consideration by the Second Circuit's decision in *Southern New England Telephone*, he contested only one of them, insisting that his non-compliance with court orders had not been willful. (Docket # 48).[2] Plaintiff's counsel failed to

---

[2] Plaintiff's counsel suggests that willfulness is a necessary prerequisite to a Rule 37 dismissal. In fact, there is some question as to whether willful or intentional non-compliance is a necessary prerequisite to the imposition of Rule 37 sanctions, including dismissals. *See Hunt v. Enzo Biochem, Inc.*, 2011 WL 4840713, at *3 & n.49 (S.D.N.Y. Oct. 12, 2011) (Scheindlin, J.) (collecting and comparing cases). But the Court need not address this unresolved issue because, as discussed in Section "II.A.1" above, the Court determines that Plaintiff's counsel's non-compliance was willful.

make any argument as to why the other factors or the full record of the case weigh against dismissal.

### Conclusion

For the foregoing reasons, the Court concludes that this action should be DISMISSED. All remaining pending applications are denied as moot and the Clerk of Court is requested to close this case.

SO ORDERED:

Dated: November ___ 2012
      New York, New York

_____
ALISON J. NATHAN
United States District Judge

22